1  SUSIE INJIJIAN - CSB 128311
   INJIJIAN LAW OFFICE, APC
2  775 San Diego Road
   Berkeley, CA 94707
3  Telephone: (510) 898-1478
   Email: sinjijian@comcast.net
4
   GIORGIO O. PANAGOS - CSB 325892
5  ULYSSES LAW
   11675 Darlington Ave., Unit 301
6  Los Angeles, CA 90049
   Telephone: (510) 220-1333
7  Email: giorgiopanagos@icloud.com
8  Attorneys for Plaintiffs
   BICH DUYEN PHAM and AIPING GAN
9

10            UNITED STATES DISTRICT COURT

11           NORTHERN DISTRICT OF CALIFORNIA

12

13  BICH DUYEN PHAM and AIPING GAN,        **CASE NO.:**

        Plaintiffs,
14
        vs.                                **COMPLAINT FOR DAMAGES**
15
16  CENTERCAL PROPERTIES, LLC;                1. **Negligence**
    OVERTON SECURITY SERVICES, INC.;          2. **Negligence – Premises Liability**
17  and IMPERIAL PARKING (U.S.), LLC, aka      3. **Negligent Hiring and Retention**
    IMPARK,
18
        Defendants.
19

20                                          **DEMAND FOR JURY TRIAL**

21

22              **COMPLAINT FOR DAMAGES**

23  1.  Plaintiffs BICH DUYEN PHAM and AIPING GAN, for their complaint against defendants

24      CENTERCAL PROPERTIES, LLC; OVERTON SECURITY SERVICES, INC; and IMPERIAL

25      PARKING (U.S.), LLC, allege as follows.

26  2.  This is a civil action for personal injuries and related harms and losses sustained by two young

27      women when they were criminally assaulted by unknown third parties (hereafter "the Perpetrators")

28                                     - 1 -
                          **COMPLAINT FOR DAMAGES**

while patronizing a commercial shopping center parking garage which the defendants operated and controlled.

## JURISDICTION AND VENUE

3. This Court has jurisdiction based on diversity pursuant to 28 U.S.C. §1332 as the dispute involves citizens of different states and the amount in controversy exceeds $75,000.00, exclusive of interest and costs.

4. Venue is proper in the Northern District of California pursuant to 28 U.S.C. §1391(a)(2) in that a substantial part of the events and omissions complained of occurred within this judicial district, which is also the location of the subject parking garage where plaintiffs were attacked and injured. Additionally, all defendants transact business throughout the State of California. 28 U.S.C. §1391(d).

## DIVISIONAL ASSIGNMENT

5. For purposes of Civil L.R. 3-2(c), this claim arises from events and omissions that occurred in substantial part in Alameda County.

## PARTIES

6. At all times mentioned here, plaintiff BICH DUYEN PHAM was a young adult woman and a citizen and resident of the State of Hawaii.

7. At all times mentioned here, plaintiff AIPING GAN was a young adult woman and a citizen and resident of the State of Hawaii.

8. At all times here mentioned, defendant CENTERCAL PROPERTIES, LLC, was and is a limited liability company organized and existing under the laws of the State of Delaware with its principal place of business in El Segundo, California, and authorized to do business and doing business throughout California. At all relevant times, this defendant was in the business of commercial real estate ownership and investment, and the management of retail shopping centers, and owned, occupied, operated, managed, controlled, or had the right to control a commercial shopping center known as "Bay Street Emeryville" including the parking garage facilities within the premises. This

**COMPLAINT FOR DAMAGES**

defendant and any and all predecessors and successors in interest and assigns, are collectively referred to here as "CENTERCAL PROPERTIES."

9. At all times here mentioned, defendant IMPERIAL PARKING (U.S.), LLC, also known as "IMPARK," was and is a limited liability company organized and existing under the laws of the State of Delaware with its principal office or place of business in Westmont, New Jersey. Plaintiffs are informed and believe that, at all relevant times, this defendant was in the business of operating, managing, supervising, and controlling commercial parking garages, lots and structures and owned, occupied, operated, managed, controlled, or had the right to control the parking facilities within the shopping center known as "Bay Street Emeryville." This defendant and any and all predecessors and successors in interest and assigns, are collectively referred to here as "IMPARK."

10. At all times here mentioned, defendant OVERTON SECURITY SERVICES, INC., was and is a corporation organized and existing under the laws of the State of California with its principal place of business in Fremont, California. Plaintiffs are informed and believe that, at all relevant times, this defendant was in the business of providing security services in commercial settings and provided security services pursuant to a written contract for the shopping center known as "Bay Street Emeryville," including the parking garage within its premises. This defendant and any and all predecessors and successors in interest and assigns, are collectively referred to here as "OVERTON SECURITY."

11. Whenever reference is made in this Complaint to any act of a defendant, such allegation shall mean that each defendant acted individually and jointly with the other defendants named in that cause of action.

12. Whenever reference is made in this Complaint to any act of any corporate or other business entity defendant, such allegation shall mean that such corporation or other business entity did the acts alleged in the Complaint through its officers, directors, employees, agents and/or representatives while they were acting within the actual or ostensible scope of their authority.

**COMPLAINT FOR DAMAGES**

13. At all relevant times, each of the defendants acted as an agent, representative, or employee of each of the other defendants and acted within the course and scope of said agency or representation or employment with respect to the causes of action in this Complaint.

14. At all relevant times, each defendant committed the acts, caused others to commit the acts, or permitted others to commit the acts referred to in this Complaint.

## GENERAL ALLEGATIONS

15. At all relevant times, defendant CENTERCAL PROPERTIES was in the business of operating a retail business venue that was open to the public. Said defendant owned, operated, maintained, supervised, controlled, and had the right to control, the parking garage within the Bay Street Emeryville shopping center premises.

16. At all relevant times, defendant IMPARK was in the business of operating parking facilities for a profit, including at retail business venues that are open to the public. Said defendant owned, operated, maintained, supervised, controlled, and had the right to control, the parking garage within the Bay Street Emeryville shopping center premises.

17. Defendants, and each of them, held themselves out to the public and to plaintiffs as providing a safe place to visit for shopping, dining, and entertainment, and provided parking for a fee for visitors of the Bay Street Emeryville shopping center on the premises. In online marketing materials for public viewing, defendant CENTERCAL PROPERTIES described parking at the shopping center as follows: "Bay Street Emeryville provides approximately 1,900 parking spaces for shoppers, moviegoers and diners. Parking is located in three decks within the property as well as on street parking along Bay Street. All facilities are well lit and access points are clearly marked."

18. Plaintiffs allege on information and belief that, at all relevant times, defendant OVERTON contracted with defendants CENTERCAL PROPERTIES and IMPARK to provide security services to the employees, and patrons of Bay Street Emeryville within the premises and included

- 4 -
**COMPLAINT FOR DAMAGES**

parking facilities. In online marketing materials for public viewing, defendant CENTERCAL PROPERTIES advertised to the public that security was provided on a 24-hour basis.

19. On or about July 12, 2021, at approximately 2:30 PM, plaintiffs entered the Bay Street Emeryville shopping center parking garage intending to visit at least one of the retail stores in the shopping center. Plaintiffs were visiting California from their home state, Hawaii, and were in a rental Cadillac.

20. Plaintiff BICH DUYEN PHAM was driving the Cadillac, and plaintiff AIPING GAN was in the front passenger seat. They entered a parking space about two hundred and eighty (280) feet from their point of entry into the garage, and parked, facing south. As soon as plaintiffs had parked and began to exit their vehicle, a Lexus sedan appeared and stopped near them. At least three adult males exited the Lexus and attacked, battered, and robbed both plaintiffs of their valuables, causing each to be struck in multiple places about the head and body against the ground and other hard surfaces, and to fear for their lives.

21. From the moment that the attack began, the plaintiffs were screaming and calling loudly for help, but none arrived. There was no response from the defendants until after the perpetrators had fled the premises in plaintiffs' rental Cadillac and in the Lexus in which they had arrived.

22. Two visitors of the shopping center heard plaintiffs' screams. They had also recently arrived and were in their vehicle which was parked nearby, facing east, about thirty-three (33) feet from and perpendicular to plaintiffs' parked Cadillac. Turning their attention toward the screams, they witnessed the violent assault in progress. They remained inside their parked vehicle, fearing for their own safety. One of the two witnesses then used her iPhone to capture part of the ongoing attack on video. Her companion called 911.

23. The Emeryville police responded to the 911 emergency call and arrived after the perpetrators had left. The two plaintiffs and the two witnesses remained at the scene and related what had happened to the investigating Emeryville police officers. They described the perpetrators as young men whose faces were covered by their clothing.

**COMPLAINT FOR DAMAGES**

24. At all times before, during and after plaintiffs were violently assaulted, battered and robbed, there was in evidence no security precaution, warning, intervention, or response, such that measures to protect the personal safety of shopping center guests in the garage were nonexistent. As set forth below, the perpetrators' attack on plaintiffs was facilitated and enabled by the conduct of defendants and each of them. The conduct of the defendants and each of them was therefore a substantial contributing factor in causing harm to plaintiffs.

## FIRST CAUSE OF ACTION

(For Negligence Against All Defendants)

25. Plaintiffs fully incorporate here by reference each of the preceding paragraphs of this Complaint.

26. At the time of above-described attack on July 12, 2021, plaintiffs were legitimately on the premises as invited guests of the Bay Street Emeryville shopping center and as paying users of the parking garage within the shopping center premises. Plaintiffs were unfamiliar with the area and unaware of any history of violent crime at the Bay Street Emeryville shopping center.

27. At all times here mentioned, defendant CENTERCAL PROPERTIES controlled, and had the right to control the Bay Street Emeryville shopping center and parking garage. Plaintiffs are informed and believe that CENTERCAL PROPERTIES exercised its control, and its authority to control said premises, and reaped profits therefrom by virtue of its status as owner and operator of the premises. Accordingly, defendant CENTERCAL PROPERTIES owed a nondelegable duty of care arising from its special relationship with plaintiffs as patrons of the shopping center businesses to act reasonably in the management of the premises, including taking steps to protect plaintiffs from foreseeable risks of harm while using the Bay Street Emeryville shopping center and parking garage, to secure the premises, to warn guests of the existing danger, and to control, prevent, and interrupt third-party criminal assaults, and to respond meaningfully to patrons victimized by such crimes on the premises.

28. At all times here mentioned, defendant IMPARK controlled, and had the right to control the Bay Street Emeryville parking garage, which it operated and managed for a profit. Plaintiffs are

- 6 -

**COMPLAINT FOR DAMAGES**

informed and believe that IMPARK exercised its control, and its authority to control said premises, and reaped profits therefrom by virtue of its status as operator and manager of the parking garage premises pursuant to leases, concessions or service contracts, the terms of which are presently unknown to plaintiffs. Accordingly, defendant IMPARK owed a duty of care arising from its special relationship with plaintiffs as parking garage patrons to act reasonably in the management of the premises, including taking steps to protect plaintiffs from foreseeable risks of harm while using the Bay Street Emeryville parking garage, to secure the premises, to warn guests of the existing danger, and to control, prevent and interrupt third-party criminal assaults, and to respond meaningfully to patrons victimized by such crimes on the premises.

29. Plaintiffs allege on information and belief that, at all times here mentioned, defendant OVERTON was obligated under contract to provide security services at the Bay Street Emeryville shopping center, including the parking garage facilities, pursuant to one or more service contracts, the terms of which are presently unknown to plaintiffs. Accordingly, defendant OVERTON owed a duty of care arising from the special relationship created with plaintiffs as patrons of the Bay Street Emeryville shopping center and the parking garage facilities within the premises, to comply with its obligations to secure the premises, to comply with industry standards in the performance of these obligations, to warn guests of the existing danger, and to control, prevent and interrupt third-party criminal assaults.

30. The above-described attack on plaintiffs on July 12, 2021, was not the first such attack to take place at the premises. In fact, there had been other crimes at or near the Bay Street Emeryville parking garage where plaintiffs were attacked, including but not limited to the following, publicly available, reported incidents: on July 8, 2021 (robbery), on July 3, 2021 (carjacking), on June 23, 2021 (carjacking), on May 5, 2021 (robbery), on April 5, 2021 (assault), on September 19, 2020 (assault with a deadly weapon), and on June 20, 2020 (carjacking and kidnapping). As with the attack on plaintiffs on July 12, 2021, most of these crimes occurred during daylight hours. Moreover, there had been multiple reports of burglaries and thefts at the Bay Street Emeryville

**COMPLAINT FOR DAMAGES**

parking garage and at parking facilities at other retail businesses and hotels in Emeryville generally.

31. Defendants, and each of them, knew or should have known of the extraordinarily high incidence of violent crime in Emeryville retail and commercial establishments generally, and at the Bay Street parking garage specifically. Given the heightened foreseeability of the risk of third-party criminal assaults on the premises, defendants should have, in the exercise of reasonable care, taken steps to reduce the risk in the shopping center garage, to secure the premises, to warn guests of the existing danger, and to control, prevent and interrupt third-party criminal assaults. Yet they took no such steps, or took steps inadequate to the risk, and allowed and encouraged the same to continue despite the danger posed to residents, employees, and shopping center guests such as plaintiffs.

32. Defendants, and each of them, so negligently and recklessly controlled, managed, inspected, and supervised the parking garage that members of the public such as plaintiffs who were invited to and did pay to park on the premises were unknowingly exposed to harms from third-party assaults while in the parking garage.

33. Plaintiffs allege on information and belief that defendants elected to establish and implement policies and procedures that had the effect of encouraging criminal activity. Plaintiffs allege further on information and belief that defendants tolerated chronic lack of compliance by their own agents and employees with the policies they did establish for the purpose of preventing and discouraging such activity.

34. The perpetrators who harmed plaintiffs as herein set forth had been attracted to the Bay Street Emeryville garage as a location where security was lax or nonexistent and where they could have easy access to unprotected shoppers such as plaintiffs. Consequently, the plaintiffs were violently assaulted, battered, robbed by the perpetrators in the Bay Street Emeryville garage, and the defendants did nothing to prevent, thwart or stop the public attack, and had done nothing to warn plaintiffs of the heightened risk of crime on the premises.

- 8 -
**COMPLAINT FOR DAMAGES**

35. The negligence and other wrongful conduct of defendants, and each of them, was a legal cause of, and substantial factor in, plaintiff BICH DUYEN PHAM's harm. As a direct and proximate result of defendants' negligence plaintiff BICH DUYEN PHAM suffered physically traumatic injuries, including fractures, strains and contusions, extreme mental anguish and severe emotional distress, fearing for her own life and safety, and has further suffered symptoms of anxiety, depression, post-traumatic stress, and related symptoms, and will continue to suffer the same into the future, all to her general damage in an amount in excess of the jurisdictional minimum of this Court.

36. As a further, direct and proximate result of the negligence of defendants, and each of them, plaintiff BICH DUYEN PHAM has had to employ doctors and other mental health practitioners to diagnose and treat her and has and will in the future incur expenses for such treatment, and has and will suffer related expenses, all in an amount of special damages to be proven at trial.

37. As a further, direct and proximate result of the negligence of defendants, and each of them, plaintiff BICH DUYEN PHAM has been unable to attend to her usual occupation and has suffered, and will in the future suffer, loss of earnings and wages, loss of earning capacity, and loss of the ability to provide household services, and has and will suffer related expenses, all in an amount of special damages to be proven at trial.

38. The negligence of defendants, and each of them, was a legal cause of, and substantial factor in, plaintiff AIPING GAN's harm. As a direct and proximate result of defendants' negligence plaintiff AIPING GAN suffered physically traumatic injuries, including fractures, strains and contusions, extreme mental anguish and severe emotional distress, fearing for her own life and safety, and has further suffered symptoms of anxiety, depression, post-traumatic stress, and related symptoms, and will continue to suffer the same into the future, all to her general damage in an amount in excess of the jurisdictional minimum of this Court.

39. As a further, direct and proximate result of the negligence of defendants, and each of them, plaintiff AIPING GAN has had to employ doctors and other mental health practitioners to diagnose and treat

- 9 -
**COMPLAINT FOR DAMAGES**

her and has and will in the future incur expenses for such treatment, and has and will suffer related expenses, all in an amount of special damages to be proven at trial.

40. As a further, direct and proximate result of the negligence of defendants, and each of them, plaintiff AIPING GAN has been unable to attend to her usual occupation and has suffered, and will in the future suffer, loss of earnings and wages, loss of earning capacity, and loss of the ability to provide household services, and has and will suffer related expenses, all in an amount of special damages to be proven at trial.

WHEREFORE, plaintiffs pray judgment against the defendants, and each of them, as hereafter set forth.

## SECOND CAUSE OF ACTION

(For Negligence - Premises Liability - Against All Defendants)

41. Plaintiffs fully incorporate here by reference each of the preceding paragraphs of this Complaint.

42. Before the perpetrators entered the premises and committed the above-described crimes and acts on plaintiffs, defendants, and each of them knew or should have known that the incidence, frequency, and nature of crimes at Bay Street Emeryville and in the Emeryville area and its commercial centers, including but not limited to violent crimes and assaults, warranted the provision of appropriate security measures. Reasonable measures were necessary for the safety and protection of Bay Street Emeryville guests such as the plaintiffs. Defendants and each of them knew, and in the exercise of reasonable care should have known, sufficiently in advance of the perpetrators' attack on plaintiffs to prevent it, or be prepared to respond to a violent crime in progress, that Bay Street shopping center patrons were especially vulnerable to third-party assaults in the parking garage.

43.  Despite their knowledge and the widely available information regarding local criminal activity, and despite defendants' ability to employ security measures and take precautions to eliminate or meaningfully reduce the known risk, and to protect patrons who are being victimized, defendants and each of them negligently and recklessly failed to adopt, implement and enforce appropriate

- 10 -
**COMPLAINT FOR DAMAGES**

security measures or other precautions for the safety of guests of the shopping center, and failed to secure the premises, to warn guests of the existing danger, and to control, prevent and interrupt the violent assault on plaintiffs when it occurred. Among other things, defendants permitted the Lexus sedan to freely enter the parking structure gates which were or should have been monitored by security cameras even though the Lexus had no license plates and was occupied by four or five hooded and masked men. Defendants also failed to interrupt the assault and robbery while it was occurring even though they were or should have been near enough and had the physical ability and legal duty to do so.

44. The negligence of defendants, and each of them, was a legal cause of, and substantial factor in, plaintiffs' harm. As a direct and proximate result of defendants' negligence, plaintiffs were violently assaulted, battered and robbed at the Bay Street Emeryville parking garage and were caused to suffer the injuries and damages here alleged.

WHEREFORE, plaintiffs pray judgment against the defendants, and each of them, as hereafter set forth.

## **THIRD CAUSE OF ACTION**

### (For Negligent Hiring, Training and Retention Against All Defendants)

45. Plaintiffs fully incorporate here by reference each of the preceding paragraphs of this Complaint.

46. At all times mentioned here, and prior to July 12, 2021, defendants and each of them had the authority to hire, retain and entrust their respective employees, agents, independent contractors, and others to provide security services on the Bay Street Emeryville premises for the protection and safety of their patrons, as well to suspend and terminate employees, agents, contractors and others to whom said defendants had entrusted such work, and who were found after hiring to be incompetent or unfit for that purpose.

47. At all times mentioned here, defendants and each of them owed a duty of care to exercise said authority to hire, retain and entrust their respective employees, agents, independent contractors, and others to provide security services on the Bay Street Emeryville premises.

- 11 -
**COMPLAINT FOR DAMAGES**

48. At all times here mentioned, and prior to July 12, 2021, defendants, and each of them, knew or reasonably should have known that the employees, agents, independent contractors, and others they hired to perform such services, were incompetent or unfit to perform the work entrusted to them, and/or failed to exercise reasonable care to discover whether said employees and others were unfit or incompetent to perform the work, and/or failed to properly train and instruct them.

49. Plaintiffs allege on information and belief that defendants, and each of them, nevertheless negligently and recklessly hired employees, agents, independent contractors, and others to perform such services who were incompetent or unfit to perform the work entrusted to them, and/or failed to exercise the authority they had to suspend and terminate such agents and employees who were incompetent or unfit after they had discovered, or reasonably should have discovered, that said agents and employees were incompetent or unfit.

50. The incompetence, lack of fitness, and lack of training and instruction of said agents and employees of defendants, were a substantial contributing factor in the acts and omissions set forth above, causing the plaintiffs to suffer violent assault, battery and robbery at the Bay Street Emeryville parking garage and the injuries and damages to the plaintiffs as here alleged.

WHEREFORE, plaintiffs pray judgment against the defendants, and each of them, as follows:

A. For general damages, also referred to as non-economic damages, past and future, the exact amount according to proof;

B. For special damages, also referred to as economic damages, past and future, the exact amount according to proof;

C. For all costs of suit incurred here;

D. For prejudgment interest, according to proof;

E. For post-judgment interest, according to proof; and

F. For such other and further relief allowable under the law and as the Court may deem just and proper, according to proof.

**COMPLAINT FOR DAMAGES**

DATED: February 9, 2022                    INJIJIAN LAW OFFICE, APC


By: _/s/_____
                              Susie Injijian
                              Attorneys for Plaintiffs

**COMPLAINT FOR DAMAGES**

## DEMAND FOR TRIAL BY JURY

Plaintiffs BICH DUYEN PHAM and AIPING GAN hereby demand a trial by jury as to all Causes of Action.

DATED: February 9, 2022                                    INJIJIAN LAW OFFICE, APC

By: _/s/_*Susie Injijian*_____
　　　Susie Injijian
　　　Attorneys for Plaintiffs

- 14 -
**COMPLAINT FOR DAMAGES**