UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| BICH DUYEN PHAM, et al.,<br><br>         Plaintiffs,<br><br>    v.<br><br>OVERTON SECURITY SERVICES, INC., et al.,<br><br>         Defendants. | Case No. 22-cv-00849-AMO<br><br>**ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**<br><br>Re: Dkt. No. 54 |

Defendants' Joint Motion for Summary Judgment was heard before this Court on February 1, 2024. Having reviewed the parties' submissions and carefully considered their arguments therein and those made at the hearing, as well as the relevant legal authority, the Court hereby **GRANTS** Defendants' motion, for the following reasons.

## BACKGROUND[1]

Plaintiffs Bich Duyen Pham and Aiping Gan are residents of Honolulu, Hawaii. Pham Decl. ¶¶ 1-2; Gan Decl. ¶¶ 1-2. In July 2021, they traveled together to the San Francisco Bay Area for a vacation. Pham Decl. ¶¶ 2-3; Gan Decl. ¶ 2. Defendant CenterCal Properties, LLC ("CenterCal") owned Bay Street Emeryville ("Bay Street"), an open-air mall in Emeryville, California, where Plaintiffs shopped. Hook Decl. ¶¶ 4-5. Bay Street is a commercial space with retailers, restaurants, a movie theater, and parking garages that are open to the public, which runs about two to three city blocks. Opp. Br. at 3. Defendant Overton Security Services ("Overton") was the security contractor at Bay Street during the relevant period, having provided private

---

[1] The Court must view the facts in the light most favorable to the non-moving party and give it the benefit of all reasonable inferences to be drawn from those facts. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Olsen v. Idaho State Bd. of Med.*, 363 F.3d 916, 922 (9th Cir. 2004).

security services onsite since April 11, 2011.[2]  Esplana Decl. ¶ 2; Hook Decl. ¶¶ 6-7.  Pham and Gan brought this lawsuit against Defendants after they were assaulted in the Bay Street parking garage.  CenterCal and Overton together move for summary judgment.  ECF 54.

**A.     The Incident**

On Monday July 12, 2021, Pham and Gan made their second trip to Bay Street to return an item they had purchased at the mall a couple days prior.  Pham Dep. (Thurston Decl. Ex. C, ECF 54-4) 23:18-22, 176:19-22; Gan Dep. (Thurston Decl. Ex. D) 15:23-16:2, 16:18-23, 160:13-18.  Upon parking their rental Cadillac in the Bay Street parking garage, two or three men exited a Lexus that had pulled up behind them, attacked Pham and Gan, stole their rental car, and immediately fled the scene.  Pham Dep. 25:25-27:23, 28:3-20, 29:13-33:4, 35:1-15, 40:15-24, 41:5-11; Gan Dep. 15:6-10; 18:23-21:6; 26:8-19.  A witness on the scene called 911.  Pham Dep. Tr. at 46:8-17.  The incident happened "in a blink of an eye," and "way too fast for [Pham] to realize what was going on in the moment."  Pham Dep. 37:15-20, 40:18-41:4; *see also* Gan Dep. 23:12-15 (describing the assault as having happened "very fast").  Gan recalled a security guard arriving on the scene after the assault.  Gan Dep. 28:21-29:11.

At the time of the attack, Overton had two security guards on duty.  Esplana Decl. ¶ 4; Hill Decl., ¶ 2; Hill Dep. (Thurston Decl. Ex. E) 97:9-99:25, 100:17-24; Birchett Dep. (Thurston Decl. Ex. F) 9:2-16.  Overton security guard Tenika Hill was stationed inside the security office, acting as the dispatch officer and monitoring security camera feeds.  Esplana Decl. ¶ 4; Hill Decl. ¶¶ 2-3; Hill Dep. 82:12-83:25.  The second security guard, James Birchett, was assigned to patrol the premises.  Esplana Decl. ¶ 4; Hill Decl. ¶¶ 2-3; Birchett Dep. 9:2-16.

Upon learning of the carjacking by way of a call from an Impark employee in the parking garage, Hill immediately dispatched Birchett to the garage and contacted Emeryville Police Department.  Hill Dep. 97:9-99:25, 100:17-24, 105:16-106:25.  Birchett was on foot patrol in the mall at the time but heard screaming coming from the parking garage.  Pham Dep. 37:6-10, 48:22-

---

[2] Defendant Imperial Parking US ("Impark") operated the parking garage at Bay Street during the relevant period.  Plaintiffs settled with Impark, and Impark has been dismissed following the Court's determination of a good faith settlement.  ECF 76.  Due to the dismissal, CenterCal and Overton are the only two remaining Defendants.

49:9; Birchett Dep. 10:21-12:19, 35:23-37:4. He proceeded to the garage where the incident had occurred, arriving within minutes of receiving Hill's dispatch call. Birchett Dep. 11:1-13:21. The perpetrators of the incident had already fled the premises. Birchett Dep. 13:22-15:8, 38:1-20.

The attack and carjacking were not captured on the garage surveillance video. Hill Dep. 108:17-110:21, 115:25-116:4; Birchett Dep. 40:18-41:5; Hill Decl. ¶ 3. However, Hill located footage of a silver Lexus sedan with no license plates following the Plaintiffs' stolen Cadillac out of the garage. Hill Dep. 108:17-110:21; Officer Murch Dep. 42:22-43:19. The criminal assailants have never been identified or apprehended. Lt. Alton Dep. 56:9-11. Plaintiffs have no information whether the criminal assailants who attacked them had ever been to Bay Street prior to the day of the incident and further noted that, during their prior visit to Bay Street, they did not witness any criminal activity. Pham Dep. 176:19-177:12; Gan Dep. 27:18-21, 160:13-21.

**B.    Defendants' Knowledge of Recent Crime**

The carjacking Plaintiffs suffered was the third over the course of 19 days at Bay Street, including carjackings that took place on June 23, July 3, and July 12, 2021. ECF 62 at 15 (citing Emeryville Police Department ("Emeryville PD") Incident Reports). After each assault, Emeryville PD contacted Overton security officers to review footage from the Bay Street closed-circuit television camera system. *See, e.g.*, Officer Drexler Dep. (Injijian Decl., Ex. 14) 29:5-18; Officer Worthen Dep. (Injijian Decl. Ex. 15) 25:21-27:5. The surveillance footage shows the entrance and departure of the stolen vehicles from the Bay Street parking garage along with a gray Lexus sedan Emeryville PD suspected to relate to the car thefts. Officer Worthen Dep. 30:21-31:15. It did not capture the assaults. *Id.*; Hill Decl. ¶ 3. Prior to July 12, 2021, Emeryville PD informed Hill, the onsite dispatcher for Overton, that a Lexus fitting a similar description was "known for being seen after a vehicle is stolen" at Bay Street. Hill Dep. 108:17-110:21. Overton staff, including Hill, Birchett, and Overton's general manager Lauren Esplana, all were all unaware of any prior instances of carjackings at Bay Street before the June 12, 2021 incident. Esplana Decl. ¶¶ 6-8; Birchett Dep. 51:3-13; Hill Decl. ¶ 4; Hill Dep. 120:4-121:2. CenterCal staff were unaware of prior instances of carjackings at Bay Street. Hook Decl. ¶¶ 12-15. Indeed, Emeryville PD officers stated that carjackings are a rare occurrence in the city. Lt. Alton Dep.

(Thurston Decl. Ex. G) 68:25-69:14; Officer Murch Dep. (Thurston Decl. Ex. L) 48:25-49:2.

## DISCUSSION

Defendants CenterCal and Overton move for summary judgment as to all claims against them. Plaintiffs assert three causes of action against CenterCal and Overton, all species of negligence: general negligence, premises liability, and negligent hiring/retention. Plaintiffs acknowledged at the hearing that each of the causes of action sounds in negligence and that the same analysis of duty applies across all three.

"To establish a cause of action for negligence, the plaintiff must show that the 'defendant had a duty to use due care, that [the defendant] breached that duty, and that the breach was the proximate or legal cause of the resulting injury.'" *Brown v. USA Taekwondo*, 11 Cal. 5th 204, 213 (2021) (quoting *Nally v. Grace Community Church*, 47 Cal. 3d 278, 292 (1988)). Each person generally has a duty to act with reasonable care under the circumstances. *Cabral v. Ralphs Grocery Co.*, 51 Cal. 4th 764, 771 (2011) (*Cabral*); *see also* Cal. Civ. Code § 1714(a). However, the duty of care "is not universal [and] not every defendant owes every plaintiff a duty of care." *Brown*, 11 Cal. 5th 204 at 213. For instance, "one owes no duty to control the conduct of another, nor to warn those endangered by such conduct." *Regents of Univ. of California v. Superior Ct.*, 4 Cal. 5th 607, 619 (2018) (quoting *Davidson v. City of Westminster*, 32 Cal. 3d 197, 203 (1982)).

California law provides for an exception to the general rule of no-duty-to-protect against the acts of another, establishing a duty where the defendant has a "special relationship" with either the dangerous third party or with the victim.[3] *Brown*, 11 Cal. 5th at 211; *see also Delgado v. Trax Bar & Grill*, 36 Cal. 4th 224, 235 (2005) ("A defendant may owe an affirmative duty to protect another from the conduct of third parties if he or she has a 'special relationship' with the other person." (citations omitted)). In determining whether to apply the exception, Courts engage in a two-step inquiry, examining (1) whether there exists a special relationship between the parties

---

[3] Although Plaintiffs repeatedly refer to Defendants' *statutory* duty, they cite for this premise California Civil Code section 1714, which merely establishes the "default rule" in California law for each person "to exercise, in his or her activities, reasonable care for the safety of others." *Cabral*, 51 Cal. 4th at 771. Such a broad rule for the general duty of care does not establish a special relationship between Defendants and Plaintiffs.

4

giving rise to an affirmative duty to protect from injuries caused by a third party; and if so, (2) whether the policy considerations set forth in *Rowland v. Christian*, 69 Cal. 2d 108 (1968) – the "*Rowland* factors" – weigh in favor of limiting that duty. *Brown*, 11 Cal. 5th at 209. Therefore, "even when a special relationship gives rise to an affirmative duty to protect, a court must still consider whether the policy considerations set out in *Rowland* warrant a departure from that duty in the relevant category of cases." *Brown*, 11 Cal. 5th at 222. The Court considers the two steps in turn.

### A. Special Relationship

A special relationship has "a few common features," which include that "one party relies to some degree on the other for protection," one party has "superior control over the means of protection," the relationship has "defined boundaries," that create "a duty of care owed to a limited community, not the public at large," and the relationship "especially benefit[s] the party charged with a duty of care." *Regents*, 4 Cal. 5th at 620-21. Classic examples of such a special relationship are those "between common carriers and their passengers, or innkeepers and their guests," but the California Supreme Court also found a special relationship exists between a university and undergraduate students in light of students' dependence on the university in combination with the university's control over the campus and student life. *Id.* at 620-21 (citing Rest.3d Torts, Liability for Physical and Emotional Harm, § 40, subd. (b)(1)-(2)); *see also Giraldo v. Dep't of Corr. & Rehab.*, 168 Cal. App. 4th 231, 250-51 (2008) (the "epitome" of a special relationship exists between a jailer and prisoner). "Courts have found such a special relationship in cases involving the relationship between business proprietors such as shopping centers, restaurants, and bars, and their tenants, patrons, or invitees." *Delgado*, 36 Cal. 4th at 235. This includes the "'well established' rule that commercial proprietors (because they generally stand in a special relationship with their tenants, patrons, or invitees) are required to 'maintain land in their possession and control in a reasonably safe condition' and that this general duty includes taking 'reasonable steps to secure common areas against foreseeable criminal acts of third parties that are likely to occur in the absence of such precautionary measures.'" *Delgado*, 36 Cal. 4th at 237 (quoting *Ann M. v. Pac. Plaza Shopping Ctr.*, 6 Cal. 4th 666, 674 (1993)). Where the defendant

does not "sit[ ] in a relation to the parties that creates an affirmative duty to protect the plaintiff from harm, however," California courts "have uniformly held the defendant owes no legal duty to the plaintiff." *Brown*, 11 Cal. 5th at 216.

Here, the Court finds that is unclear whether a special relationship existed between these parties based on the California authority cited and the facts presented. On the one hand, the California Supreme Court opined on multiple occasions that a special relationship generally exists between a commercial proprietor and its tenants, patrons, or invitees. *See Regents*, 4 Cal. 5th at 620 (citing Rest.3d Torts, Liability for Physical and Emotional Harm, § 40, subd. (b)(1)-(2)); *see also Delgado*, 36 Cal. 4th at 237 (citing *Ann M.*, 6 Cal. 4th at 674). However, by comparison, the factual circumstances presented in this case weigh against the existence of a special relationship. Unlike a common carrier, for example, CenterCal does not maintain Bay Street as a closed environment in which shoppers relinquish control and depend on the proprietor to ensure their safety. *Cf. Lopez v. Southern Cal. Rapid Transit Dist.*, 40 Cal. 3d 780, 789 (1985) (finding that common carriers' special relationship with passengers gives rise to a duty to protect passengers from onboard violence). Similarly, the facts are unlike a jailer and prisoner or even a university and its undergraduate students. *Cf. Giraldo*, 168 Cal. App. 4th at 250-51; *Regents*, 4 Cal. 5th at 625. Pham and Gan fail to present evidence of a special relationship between them and CenterCal, as they fail to demonstrate their reasonable dependence on the property owner or its control over third parties with whom they could come into contact at Bay Street.

As for a special relationship with Overton, Pham and Gan rely heavily on a case in which the Court of Appeal found that a special relationship existed between a pair of security guards for a fast-food restaurant and a patron. *See Marois v. Royal Investigation & Patrol, Inc.*, 162 Cal. App. 3d 193 (1984). In that case, two on-duty security guards watched a man use a baseball bat first to vandalize a kiosk located in the restaurant parking lot and then to attack the plaintiff, a Jack-In-The-Box customer, when he tried to intercede and prevent the vandalism. *Id.* at 197. The *Marois* court held in part that, "By contracting with the business to provide security services, the security guard creates a special relationship between himself and the business's customers. This relationship, in and of itself, is sufficient to impose on the guard the obligation to act affirmatively

to protect such customers while they are on the business premises." *Id.* at 200 (citations and footnote omitted). In analyzing the security guards' special-relationship-based duty, however, the Court of Appeal focused on the circumstances that arose at the time of the assault. *Id.* at 201-02. The court emphasized that, while a person has no general duty to come to the aid of another or to control the conduct of third persons, when "an individual is being physically assaulted, or where another individual is approached by a bat-wielding assailant," there is a "clearly foreseeable risk" to which the security guards should respond. *Id.* at 202. In this way, *Marois* departs from the structure for assessing a duty to protect against harm from third-parties presented in *Brown*, improperly conflating the special relationship analysis of the first step with the foreseeability analysis saved for the second step. The Court accordingly declines to follow *Marois*.

Further, *Marois* is factually distinguishable because that court's special relationship analysis centered on the physical presence of the security guards at the time and location of the subject assault and their opportunity to intervene. *Id.* at 202. Overton's foot patrol security guard was not present for Plaintiffs' assault because he was patrolling the multiple blocks of Bay Street, simply in a different location than where the assault occurred. *See, e.g.*, Birchett Dep. 9:2-16. When he responded to the sound of screaming and the radio call from dispatch, the suspects had already fled the premises and the event was over. Birchett Dep. 13:22-15:8, 38:1-20. Moreover, the assault itself took place in a "blind spot" where it was not observable over the security camera system. Hill Decl. ¶ 3. Ultimately, this case is unlike *Marois* and the Court cannot conclude that a special relationship existed.

In sum, Plaintiffs fail to demonstrate that a special relationship existed between them and either CenterCal or Overton that gave rise to a legal duty to protect from the criminal conduct of third parties. But even if the Court accepted that a special relationship existed, Plaintiffs' claims fail on the second part of the test set forth in *Brown*, whether the factors set forth in *Rowland* weigh in favor of limiting such a special-relationship-based duty.

**B.**     ***Rowland* Factors**

The *Rowland* factors fall into two categories. "Three factors – foreseeability, certainty, and the connection between the plaintiff and the defendant – address the foreseeability of the

7

relevant injury, while the other four – moral blame, preventing future harm, burden, and availability of insurance – take into account public policy concerns that might support excluding certain kinds of plaintiffs or injuries from relief." *Kesner v. Superior Ct.*, 1 Cal. 5th 1132, 1145 (2016). Issues related to foreseeability are assessed on the basis of information available at the time of the alleged negligence, while "'our duty analysis is forward-looking' in regard to policy issues surrounding burdens that would be placed on defendants." *Kuciemba v. Victory Woodworks, Inc.*, 14 Cal. 5th 993, 1022 (2023) (citation omitted).

The California Supreme Court has long recognized that "[t]he most important of these considerations in establishing duty is foreseeability." *Tarasoff v. Regents of Univ. of California*, 17 Cal. 3d 425, 434 (1976). In considering whether a special relationship created a duty to protect against third party criminal activity, the California Supreme Court held, "only when 'heightened' foreseeability of third party criminal activity on the premises exists – shown by prior similar incidents or other indications of a reasonably foreseeable risk of violent criminal assaults in that location – does the scope of a business proprietor's special-relationship-based duty include an obligation to provide guards to protect the safety of patrons." *Delgado*, 36 Cal. 4th at 240 (citing *Ann M.*, 6 Cal. 4th at 679). In that case, *Delgado v. Trax Bar & Grill*, the court held that the defendant bar did not owe the plaintiff, a bar patron and victim of assault in the parking lot, a special-relationship-based duty because the plaintiff failed to present evidence of prior similar incidents of violent criminal assault. *Id.* at 245 (finding that the bar instead owed a minimally burdensome duty to protect the assaulted patron based on events unfolding in the immediate presence of the bar's security staff). The *Delgado* plaintiff's failure to show prior similar incidents of violent criminal assaults in that location was key to the court's determination that the defendant could not reasonably foresee – and thus held no duty to protect against – the assault suffered by the plaintiff at the hands of third parties. *Id.* at 240. The court clarified that "the foreseeability of the criminal conduct in question remains relevant to the existence and scope of a proprietor's duty under the special relationship doctrine." *Delgado*, 36 Cal. 4th at 248.

Drawing from *Delgado*, the Court of Appeal explained that foreseeability "is tested by what the defendant knows, not what the defendant could have or should have learned." *Margaret*

8

*W. v. Kelley R.*, 139 Cal. App. 4th 141, 158 (2006). In *Margaret W.*, the court found that the defendant had a special relationship with the teenage plaintiff because the defendant allowed the plaintiff to sleepover at the defendant's house. *Id.* at 145, 152. Unknown to the defendant, the plaintiff left the house in the middle of the night with some boys, who later raped her. *Id.* The Court of Appeal held that the defendant had no duty to protect the plaintiff from the boys because the defendant did not know that plaintiff would leave with the boys, nor did she know any of the boys, much less anything about them. *Id.* at 157-58. The court in *Romero v. Superior Court*, 89 Cal. App. 4th 1068 (2009), considered similar facts. There, the defendants hosted their child's teenage friends at their home, and one of the teenagers sexually assaulted the plaintiff while the defendants picked up food. *Id.* at 1073-75. The *Romero* court held that the defendants owed no duty to protect the plaintiff from the assault because there was no evidence that the defendants "had prior actual knowledge, and thus must have known, of the offender's assaultive propensities." *Id.* at 1084. All these cases support the fundamental principle that "a duty to take affirmative action to control the wrongful acts of a third party will be imposed only where such conduct can be reasonably anticipated." *Sakiyama v. AMF Bowling Centers, Inc.*, 110 Cal. App. 4th 398, 406 (2003) (quotations omitted).

Here, the *Rowland* factors weigh against imposing a duty because Plaintiffs fail to present evidence that the carjacking was foreseeable by Overton or CenterCal. The undisputed facts establish that the attack occurred suddenly and without warning. *See, e.g.*, Gan Dep. 23:12-15. Plaintiffs testified that the incident occurred within minutes of their arrival at Bay Street. Pham Dep. 25:25-27:23, 28:3-20, 29:13-33:4, 35:1-15, 40:15-24, 41:5-11; Gan Dep. 15:6-10; 18:23-21:6; 26:8-19. Neither Overton nor CenterCal had received any information or reports of suspicious activity indicating that the attack on Plaintiffs was imminent or even likely. Esplana Decl. ¶¶ 6-8; Hill Decl. ¶ 4; Hook Decl. ¶¶ 14-15; Hill Dep. 120:4-121:2; Birchett Dep. 51:3-13. Further, there is no evidence that CenterCal or Overton knew or should have known that individuals or vehicles matching the descriptions of those involved in the criminal attack on Plaintiffs were associated with other crimes in the area. *Id.*

9

1    Pham and Gan proffer records of two carjackings in the weeks preceding their July 12,
2    2021 assault.  *See* Injijian Decl. Ex. 26, Ex. 27 (ECF 62-2 at 402-17).[4]  But importantly, they fail
3    to demonstrate that either Defendant had notice of the earlier carjackings.  To the contrary, prior to
4    the July 12, 2021 attack on Plaintiffs, CenterCal had not received reports of similar incidents at
5    Bay Street from any source.  Hook Decl. ¶¶ 12-15 (ECF 54-7 at 3).  Overton's General Manager
6    overseeing the contractor's services at Bay Street, Esplana, similarly certifies that she received no
7    notice of a carjacking similar to the one suffered by Pham and Gan until after the July 12, 2021
8    incident.  Esplana Decl. ¶ 8 (ECF 54-6 at 3).  Hill, the on-site dispatcher for Overton on the date of
9    the incident, plainly states in her declaration that she "did not receive any information regarding
10   car-jackings, or attempted car-jackings, in the Bay Street Mall parking garage prior to the very
11   unfortunate suffered by Bich Pham and Aiping Gan on July 12, 2021."  Hill Decl. ¶ 4 (ECF 54-5
12   at 2).  This evidence demonstrates that Defendants did not know of the two carjackings referenced
13   by Plaintiffs.
14   As in *Delgado*, *Margaret W.*, and *Romero*, Defendants here did not know of prior similar
15   criminal conduct by third parties, and therefore neither CenterCal nor Overton could foresee the
16   carjacking suffered by Plaintiffs.  Plaintiffs contend that Defendants should have known of the
17   specific carjackings that occurred prior to the July 12, 2021 incident, but they fail to establish that
18   Defendants were so aware, and Plaintiffs fail to identify contradictory evidence that would create a
19   genuine dispute of fact on the issue.  While Plaintiffs offer some evidence of other crime,
20   generally, within Emeryville, the mere knowledge of some crime in the surrounding area is not
21   sufficient to make an incident of this type and character foreseeable.  *See* ECF 62 at 9; *Sakiyama*,
22   110 Cal. App. 4th at 407.  In fact, Emeryville Police Officers charged with patrolling and
23   responding to calls pertaining to criminal activity at Bay Street testified that carjackings are rare in
24   the City of Emeryville.  Lt. Alton Dep. 68:25-69:14; Officer Murch Dep. 48:25-49:2.  Plaintiffs

---

[4] The police report for the July 12 carjacking of Pham and Gan shows that Emeryville PD interacted with Bay Street security staff, but the police reports for the other two carjackings referenced by Plaintiffs do not show that Emeryville PD similarly interacted with Bay Street security staff in the aftermath.  The absence of any notes showing Emeryville PD's contact with staff at Bay Street additionally weighs against finding that Defendants knew of the prior carjackings.

10

assert a generalized notion of duty that simply does not exist in this case. Neither Overton nor CenterCal had a duty to prevent third party conduct which it did not know about and could not reasonably anticipate would occur. Plaintiffs impermissibly rely on hindsight in asking the Court to impose a duty based upon information that was not known to CenterCal and Overton.

The Court finds it unnecessary to discuss in depth the remaining public policy factors of *Rowland*, including moral blame, preventing future harm, burden, and availability of insurance, because California courts have long focused nearly exclusively on the foreseeability of the criminal conduct when considering the scope of a special-relationship-based duty of business proprietors to protect against the assaults of third parties. *See, e.g.*, *Delgado*, 36 Cal. 4th at 240; *Ann M.*, 6 Cal. 4th at 679; *Sakiyama*, 110 Cal. App. 4th at 406. Those courts concluded that the policy factors such as moral blame and burden were easily outweighed by the lack of foreseeability, particularly absent similar instances of third-party criminal conduct. *Id.* This Court similarly cannot balance, for example, the burden for CenterCal and Overton to deploy additional security to protect against carjackings or the moral blame attributable to Defendants' failure to protect against carjackings in the absence of foreseeable harm of such third-party crimes. *See Vasilenko v. Grace Family Church*, 3 Cal. 5th 1077, 1091 (2017) (discussing moral blame in the context of foreseeable harm). The public policy factors therefore do not outweigh the lack of foreseeability based on Defendants' lack of knowledge of the carjackings prior to the July 12, 2021 incident.

In sum, even assuming a special relationship existed between Plaintiffs and Defendants such that Defendants owed a duty to protect from third-party criminal conduct, the carjacking incident here was not foreseeable and any such duty must be limited. Defendants therefore did not owe a duty to protect against the unforeseeable criminal conduct of third parties, and Defendants are entitled to summary judgment on the claims of negligence.

## CONCLUSION

For the foregoing reasons, including that Plaintiffs fail to establish that Defendants owed them a duty under any of their claims sounding in negligence, the Court finds that Defendants are

entitled to judgment as a matter of law.  The Court **GRANTS** Defendants' joint motion for summary judgment.

**IT IS SO ORDERED.**

Dated: February 23, 2024

**ARACELI MARTÍNEZ-OLGUÍN**
**United States District Judge**